Fernessa McCONICO

v.

Eric PATTERSON and Brandon Falls.

2140939.

Court of Civil Appeals of Alabama.

March 11, 2016.

Chevene Hill, Homewood, for appellant.

J. Patrick Lamb and Robert A. Drake, deputy dist. attys., Office of the District Attorney, Birmingham, for appellee Brandon K. Falls; brief on application for rehearing of appellee Brandon Falls filed by Luther Strange, atty. gen., and Bettie J. Carmack, asst. atty. gen.

Timothy P. Donahue, Sr., and Eleanor G. Jolley of Donahue & Associates, LLC, Birmingham, for appellee Eric Patterson.

*On Application for Rehearing*

THOMPSON, Presiding Judge.

The opinion of January 8, 2016, is withdrawn, and the following is substituted therefor.

Fernessa McConico appeals from a judgment of the Jefferson Circuit Court ("the trial court") dismissing her action against Eric Patterson, the former mayor of the City of Leeds ("the city"), and Brandon Falls, the district attorney for Jefferson County.[1] In her second amended com-

---

1. At various times in this litigation, other peo- ple had been included as defendants in this

plaint—the complaint that was before the trial court at the time the action was dismissed—McConico made the following assertions.

McConico had worked as a municipal-court magistrate for the city for approximately 10 years when, on August 10, 2008, she was placed on administrative leave while the financial records of the municipal court were audited. The audit, which McConico said had been commissioned by Patterson and conducted by an "unknown third party," concluded that $94,861.72 had been taken from the municipal court. McConico asserted that a second independent audit was conducted by Ronald L. Jones of the "Alabama Public Accountants Office." [2] That audit, too, "presumably discovered" that $94,861.72 had been taken or "misappropriated" by McConico. On September 11, 2009, the city terminated McConico's employment.

In her complaint, McConico stated that, in November 2009, she learned she was pregnant. On January 15, 2010, she said, she suffered a miscarriage approximately five months into the pregnancy.

McConico asserted that on January 7, 2010, a week before the miscarriage, she filed an action against the city alleging claims of wrongful termination and discrimination. On April 1, 2010, McConico said, Falls "charged and prosecuted" her for second-degree theft of property and "several other charges." On May 23, 2013, the complaint stated, all the criminal charges against McConico were dismissed by an assistant district attorney.

On September 30, 2014, McConico filed her initial complaint in this action. Ulti-mately, she alleged claims against Patterson and Falls, in their individual capacities, of negligence/malice, wrongful death of her unborn child, malicious prosecution, libel/defamation, and conspiracy. McConico sought compensatory and punitive damages against Patterson and Falls. Patterson and Falls each filed a motion to dismiss the action, arguing, among other things, that the claims against them were time-barred. On June 23, 2015, the trial court granted the motions to dismiss, finding that the claims, "with the possible exception of the malicious prosecution claim," were time-barred. The trial court also dismissed the malicious-prosecution claim, stating that because a Jefferson County grand jury had indicted McConico, "[t]hat, in and of itself, defeat[ed McConico's] malicious prosecution claim." McConico timely filed a notice of appeal to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

The standard that appellate courts use in reviewing a judgment dismissing an action based on the plaintiff's failure to state a claim for which relief can be granted, *see* Rule 12(b)(6), Ala. R. Civ. P., is well settled.

" 'In considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. P., a court "must accept the allegations of the complaint as true." *Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C.,* 828 So.2d 285, 288 (Ala.2002) (emphasis omitted). " 'The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed

action, but they were no longer involved in the case at the time the action was dismissed. Therefore, facts and allegations involving those other defendants will not be discussed in this opinion. Gary Clark was also a plain-tiff in this action. Clark did not appeal from the judgment.

**2.** The entity's correct name is the Alabama Department of Examiners of Public Accounts.

most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief.' " *Smith v. National Sec. Ins. Co.*, 860 So.2d 343, 345 (Ala.2003) (quoting *Nance v. Matthews*, 622 So.2d 297, 299 (Ala.1993)). In determining whether this is true, a court considers only whether the plaintiff may possibly prevail, not whether the plaintiff will ultimately prevail. *Id.* Put another way, " 'a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove *no set of facts* in support of the claim that would entitle the plaintiff to relief.' " *Id.* (emphasis added).' "

*Walter Energy, Inc. v. Audley Capital Advisors LLP*, 176 So.3d 821, 824–25 (Ala.2015)(quoting *Crosslin v. Health Care Auth. of Huntsville*, 5 So.3d 1193, 1195 (Ala.2008)). Furthermore, a trial court's order of dismissal is afforded no presumption of correctness, and an appellate court reviews the sufficiency of the complaint de novo. *DGB, LLC v. Hinds*, 55 So.3d 218, 223 (Ala.2010) (quoting *Nance v. Matthews*, 622 So.2d 297, 299 (Ala.1993)) (" 'On appeal, a dismissal is not entitled to a presumption of correctness.' ").

■ McConico first contends that the trial court erred in dismissing her claim of malicious prosecution because, she says, she was not given the opportunity to rebut the presumption of probable cause to prosecute created by the grand jury's indictment. The elements of a claim of malicious prosecution are: (1) that a judicial proceeding was initiated by the defendants, (2) that the judicial proceeding was instituted without probable cause, (3) that the judicial proceeding was instituted by the defendants maliciously, (4) that the judicial proceeding was terminated in favor of the plaintiff, and (5) that the plaintiff suffered damage as a proximate cause

of the judicial proceeding. *Eidson v. Olin Corp.*, 527 So.2d 1283, 1284 (Ala.1988) (citing *Smith v. Wendy's of the S., Inc.*, 503 So.2d 843, 844 (Ala.1987)).

■ In entering the judgment dismissing McConico's malicious-prosecution claim, the trial court properly noted that "such a claim must be predicated on a showing, inter alia, that the defendant initiated a prior action without probable cause. *See, e.g., Delchamps, Inc. v. Bryant*, 738 So.2d 824, 831 (Ala.1999). Here, we have an indictment against the plaintiff, endorsed by the foreman of a Jefferson County grand jury as a True Bill. That, in and of itself, defeats the plaintiff's malicious prosecution claim." It is true that

" '[i]n malicious prosecution the general rule is that the *finding of an indictment* by a grand jury against one charged with crime *is prima facie evidence of the existence of probable cause,* and that the acquittal of a defendant upon the trial does not tend to show a want of probable cause for believing him guilty of the offense charged when the arrest [was] made or prosecution initiated....' "

*Alabama Power Co. v. Neighbors*, 402 So.2d 958, 967 (Ala.1981) (quoting *Union Indem. Co. v. Webster*, 218 Ala. 468, 478, 118 So. 794, 803 (1928)). However,

"[t]his prima facie showing of the existence of probable cause created by an indictment by a grand jury can be overcome by a showing that the *indictment* was 'induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment.' *National Security Fire & Casualty Co. v. Bowen*, 447 So.2d 133, 140 (Ala.1983)."

*Smith*, 503 So.2d at 844.

■ In their respective briefs to this court, Patterson and Falls argue that the

malicious-prosecution claim was due to be dismissed because, they say, McConico "failed to prove" Falls acted without probable cause or failed to provide "reasonable and competent evidence" to rebut the presumption of probable cause based upon a grand-jury indictment. The case cited in Patterson's brief for the latter proposition, *Johnson v. Haynie,* 414 So.2d 946 (Ala. 1982), involved the appeal of a judgment entered on a jury verdict in favor of a plaintiff in a malicious-prosecution case. However, this appeal is from a judgment granting a motion to dismiss for failure to state a claim for which relief can be granted, and the quantum of proof necessary to sustain a jury verdict is irrelevant. Instead, we are required to view McConico's complaint most strongly in her favor, and dismissal of her malicious-prosecution claim would be proper only if it "appears beyond doubt" that she can prove no set of facts to support her claim that would entitle her to relief. *Walter Energy, Inc.,* 176 So.3d at 825. We note that the record indicates that the parties did not include any exhibits to their respective pleadings that might have converted the motions to dismiss to motions for summary judgments. *See Hoff v. Goyer,* 160 So.3d 768, 770 (Ala.Civ.App.2014). At this stage of the litigation, McConico is not required to present any evidence to support her contentions. We consider only whether she *could* prove any set of circumstances that would entitle her to relief. *Nance,* 622 So.2d at 299.

In her complaint, McConico alleged that Patterson and Falls "knew or should have known there was no misappropriated money and used the unlawful and malicious prosecution as an attempt to mete out summary punishment on the plaintiff," presumably because she had filed a civil action against the city alleging wrongful termination and discrimination. If she can prove that the grand-jury indictment was

" 'induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment,' " *Alabama Power Co.,* 402 So.2d at 967, McConico can overcome the presumption that probable cause existed to prosecute her. She is entitled to an opportunity to overcome that presumption. Thus, we conclude that the trial court erred in dismissing McConico's claim of malicious prosecution under the facts of this case as they are alleged in McConico's complaint.

■ Because this court may affirm a judgment, or a portion of a judgment, that is correct for any reason, *Boykin v. Magnolia Bay, Inc.,* 570 So.2d 639, 640 (Ala. 1990), we also consider whether McConico's malicious-prosecution claim was barred by the applicable limitations period. In *Barrett Mobile Home Transport, Inc. v. McGugin,* 530 So.2d 730, 733 (Ala.1988), our supreme court wrote: "We hold that a malicious prosecution action does not accrue until the time for filing a notice of appeal in the underlying case has expired; and, if an appeal is taken, the action for malicious prosecution will not accrue until the appeal has been finally decided." In *E.R.J. v. L.D.B.,* 702 So.2d 151, 152 (Ala. Civ.App.1997), this court affirmed a trial court's dismissal of E.R.J.'s claim of malicious prosecution. In doing so, we noted that the complaint in that case had been filed prematurely because E.R.J.'s appeal of the underlying criminal case was still pending in the Alabama Supreme Court and, therefore, the malicious-prosecution claim had not yet accrued.

In this case, the underlying criminal action pending against McConico was nol-prossed on May 23, 2013—the earliest possible date the malicious-prosecution claim would have accrued. *E.R.J.* and *Barrett Mobile Home Transp.,* supra. McConico filed her initial complaint in this action on

September 30, 2014. The statutory limitations period applicable to actions alleging malicious prosecution is two years. § 6–2–38(h), Ala.Code 1975. Because McConico filed her claim of malicious prosecution within two years of the earliest date the claim could have accrued, that claim cannot be time-barred and the judgment dismissing the claim cannot be affirmed on that basis.

Falls has submitted an application for a rehearing in which he argues for the first time that the malicious-prosecution claim against him is due to be dismissed on the grounds of either state immunity (what used to be referred to as sovereign immunity, *see Ex parte Cranman,* 792 So.2d 392, (Ala.2000)), or prosecutorial immunity. In his brief in support of his application for rehearing, Falls acknowledges that he did not raise the issue of immunity before the trial court in his motion to dismiss or in his original appellate brief to this court. Falls did not file an answer in the trial court. Ordinarily, an appellate court "cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." *Andrews v. Merritt Oil Co.,* 612 So.2d 409, 410 (Ala.1992). Furthermore, "[m]atters not argued in an appellant's brief on original submission cannot be raised for the first time on application for rehearing." *SouthTrust Bank v. Copeland One, L.L.C.,* 886 So.2d 38, 43–44 (Ala. 2003) (opinion on rehearing). However, our supreme court has held that " '[t]he assertion of State immunity challenges the subject-matter jurisdiction of the court; therefore, it may be raised *at any time* by the parties or by a court *ex mero motu.'* *Atkinson v. State,* 986 So.2d 408, 411 (Ala. 2007); see also *Ex parte Alabama Dep't of Transp.,* 978 So.2d 17, 21 (Ala.2007)." *Health Care Auth. for Baptist Health v.*

*Davis,* 158 So.3d 397, 402 (Ala.2013) (emphasis added).

Our research has revealed no Alabama authority that would preclude this rule from applying to the issue of state immunity raised for the first time on rehearing. In fact, the law is well settled that,

> " ' "[a]s a nullity, a void judgment has no effect and *is subject to attack at any time* .... [A] motion for relief from a void judgment is not governed by the reasonable-time requirement of Rule 60(b)[, Ala. R. Civ. P.]." *Ex parte Full Circle Distribution, L.L.C.,* 883 So.2d 638, 643 (Ala.2003).' *Milloy v. Woods,* 23 So.3d 48, 51 (Ala.Civ.App.2009)."

*Looney v. State,* 60 So.3d 293, 296 (Ala.Civ.App.2010)(emphasis added); *see also* Rule 60(b)(4), Ala. R. Civ. P. If Falls is entitled to state immunity, the trial court's judgment, entered without subject-matter jurisdiction, would be void. Accordingly, on rehearing we will address the merits of Falls's argument that the trial court's dismissal of the malicious-prosecution claim against him was proper under the doctrine of state immunity.

"In *Alabama Department of Transportation v. Harbert International, Inc.,* 990 So.2d 831, 839–40 (Ala.2008) (abrogated in part on other grounds by *Ex parte Moulton,* 116 So.3d 1119, 1141 (Ala.2013)), this Court stated the following well established law regarding sovereign or State immunity:

> " 'Section 14 provides generally that the State of Alabama is immune from suit: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." This constitutional provision "has been described as a 'nearly impregnable' and 'almost invincible' 'wall' that provides the State an unwaivable, absolute immunity from suit in any court." *Ex parte*

*Town of Lowndesboro,* 950 So.2d 1203, 1206 (Ala.2006). Section 14 "specifically prohibits the State from being made a party defendant in any suit at law or in equity." *Hutchinson v. Board of Trs. of Univ. of Alabama,* 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Additionally, under § 14, State agencies are ·"absolutely immune from suit." *Lyons v. River Road Constr., Inc.,* 858 So.2d 257, 261 (Ala.2003).' "

*Cooper v. Ziegler,* 193 So.3d 722, 727 (Ala. 2015).

 However, state immunity does not prohibit "actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law." *Ex parte Carter,* 395 So.2d 65, 68 (Ala.1980); *see also Cooper v. Ziegler,* 193 So.3d at 728.

> "[Our supreme ·court] has recognized that a state officer or employee may not escape individual tort liability by ' "arguing that his mere status as a state official cloaks him with the state's constitutional immunity." ' *Barnes v. Dale,* 530 So.2d 770, 781 (Ala.1988) (quoting *Tort Liability of State Officials in Alabama,* 35 Ala. L.Rev. 153 (1984)). Clearly, a state officer or employee is not protected· by § 14 when he acts willfully, maliciously, illegally, fraudulently, in .bad faith, beyond his authority, or under a mistaken interpretation of the law."

*Phillips v. Thomas,* 555 So.2d 81, 83 (Ala. 1989).

As mentioned, McConico sued Falls, alleging malicious prosecution, in his individual capacity. One of the elements of a malicious-prosecution claim is that the judicial proceeding was instituted by the defendant maliciously. *Eidson v. Olin Corp.,* 527 So.2d at 1284. Accordingly, Falls would not be entitled to state-immunity protection, as he asserts on rehearing.

 State officials and state employees sued in their individual capacities may be entitled to qualified immunity, also known as state-agent immunity. *Watkins v. Mitchem,* 50 So.3d 485, 489–91 (Ala.Civ. App.2010); *Ex parte Rizk,* 791 So.2d 911, 912 (Ala.2000).

> " '[A] motion to dismiss is typically not the appropriate vehicle by which to assert qualified immunity or State-agent immunity and ... normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery.' . *Ex parte Alabama Dep't of Mental Health & Mental Retardation,* 837 So.2d 808, 813–14 (Ala. .2002)."

*Sweatman v. Giles,* 161 So.3d 212, 218 (Ala.Civ.App.2013). In *Ryan v. Hayes,* 831 So.2d 21, 32 (Ala.2002), our supreme court pointed out that " '[i]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ. P.].' *Patton v. Black,* 646 So.2d 8, 10 (Ala.1994)." *See also Ex parte Sawyer,* 984 So.2d 1100, 1109 (Ala.2007).

 Because this appeal involves only a motion to dismiss, we cannot say, based solely on the pleadings, that Falls is entitled to qualified or state-agent immunity at this stage of the litigation. Accordingly, we cannot affirm the trial court's judgment dismissing the malicious-prosecution claim on that ground.[3]

---

**3.** We do not intend for our discussion of the applicability of state-agent immunity in this case to be understood as a determination that state-agent immunity or qualified immunity is

418

 Falls also contends, for the first time on rehearing, that this court should affirm the dismissal of the malicious-prosecution claim against him on the ground of prosecutorial immunity. Falls has not yet filed an answer in this case. Again, he has acknowledged that the issue of immunity has not been raised in the trial court. *Cf. Walker v. Tillman*, 55 So.3d 1214 (Ala.Civ.App.2010)(trial court entered a judgment dismissing a civil action against a district attorney who had asserted prosecutorial immunity in her motion to dismiss the action). Like qualified or state-agent immunity, whether prosecutorial immunity applies in a given case must be determined on a case-by-case basis. In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the United States Supreme Court held that prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 for their conduct in "initiating a prosecution and in presenting the State's case," *id.* at 431, insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Id.* at 430. However, the *Imbler* Court expressly declined to decide whether that absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31.

In *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the United States Supreme Court wrote that its opinions decided after *Imbler* have "emphasized that the official seeking absolute immunity *bears the burden of showing that such immunity is justified* for the function in question." (Emphasis added.) *See Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct.

1092, 89 L.Ed.2d 271 (1986); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); and *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Because Falls has not yet presented the issue of prosecutorial immunity to the trial court, he has clearly not met that burden. Thus any consideration of the issue of prosecutorial immunity is premature, and this court will not affirm that portion of the trial court's judgment dismissing the malicious-prosecution claim on that ground at this point in the proceedings.

 On appeal, McConico also contends that, under the doctrine of equitable tolling, her claims of negligence/malice, libel/defamation, and conspiracy were timely. In her brief to this court, McConico acknowledges that, pursuant to § 6–2–38(k) and (*l*), Ala.Code 1975, the limitations period for each of those claims expired two years after April 1, 2010, when the grand jury returned its indictment against her. The initial complaint was not filed until September 2014, more than two years after the expiration of the applicable limitations period. Nonetheless, McConico argues, during the time the limitations period was running as to those claims, she was being prosecuted in criminal court, and the speed with which the criminal case proceeded and the results of the criminal case were beyond her control. Thus, McConico contends, the doctrine of equitable tolling should be applied to the claims of negligence/malice, libel/defamation, and conspiracy.

 In her brief to this court, McConico cites no authority to support her contention that the applicable statutes of limitations were tolled because the criminal case was being litigated while her time to file those claims was running. She also

a jurisdictional bar that can be raised for the first time on rehearing.

fails to provide us with any explanation as to why the criminal case would prevent her from moving forward with a civil action on the claims other than the malicious-prosecution claim.

"It. is the appellant's burden to refer . this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. R.App. P., requires that the argument in an appellant's brief include 'citations to the cases, statutes, [and] other authorities ... relied on.' Consistent with Rule 28, '[w]e have stated that it is not the function of this court to do a party's legal research.' *Spradlin v. Spradlin,* 601 So.2d 76, 78 (Ala.1992) (citing *Henderson v. Alabama A & M University,* 483 So.2d 392, 392 (Ala.1986) (' "Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant." *Gibson v. Nix,* 460 So.2d 1346, 1347 (Ala.Civ.App.1984).'))."

*Board of Water & Sewer Comm'rs of City of Mobile v. Bill Harbert Constr. Co.,* 27 So.3d 1223, 1254 (Ala.2009).

██ McConico also argues that the statutory limitations period on her claims of negligence/malice, libel/defamation, and conspiracy should have been tolled pursuant to § 6-2-3, Ala.Code 1975, known as "the savings clause," because of what she says was Falls's fraudulent concealment that the underlying case against her should have been brought as a civil action and not as a criminal prosecution. We first note that § 41-5-22, Ala.Code 1975, the authority McConico relies on in support of her contention that criminal prosecution was inappropriate in her case, provides:

"The Chief Examiner shall keep a docket in which shall be entered, in favor of the state, county or municipality, as the case may be, cases against persons who have not properly and lawfully accounted for all sums of money coming into their hands as public officers, agents or employees. If an amount found to be due the state, county or other governmental unit or agency as a result of an examination or audit is not settled upon demand by the examiner, the Chief Examiner shall immediately thereafter issue notice to the person in default and require him to appear on a day certain and show cause why the amount due should not be paid. If the defaulting officer fails to settle or to show just cause why the amount due should not be collected, the Chief Examiner shall certify such facts and the amount due the state to the Attorney General, and the Attorney General shall bring a civil action in the name of the State of Alabama against said officer and his bondsmen. If the amount due by said officer is in favor of the county or municipality, then the Chief Examiner shall certify to the district attorney of the circuit the amount or amounts so due, and such district attorney shall proceed to collect the same by a civil action against the officer and his bondsmen."

That statute, captioned "settlement of charges," governs the procedure to be followed when a government employee cannot account for all the money for which he or she is responsible and is required to repay the missing money. There is nothing in § 41-5-22 that prohibits the parallel criminal prosecution of an employee who may have engaged in illegal conduct. Thus, Falls could not have concealed a "fact" that is untrue or does not exist.

██ Furthermore, although it is true that § 6-2-3 equitably tolls the statute of limitations on tort claims when the defendant has fraudulently concealed from the plaintiff his or her cause of action, *see DGB, LLC,* 55 So.3d at 224-26, .

"[t]o invoke the savings clause, the plaintiff may not rely on a mere generalized allegation that the defendant concealed the plaintiff's cause of action; rather, the plaintiff must state with sufficient particularity how the defendant prevented the plaintiff from discovering the true facts upon which the plaintiff's claim is based. *DGB,* 55 So.3d at 227. A plaintiff 'must allege the time and circumstances of the discovery of the cause of action.' *Id.* at 226 (citing *Angell v. Shannon,* 455 So.2d 823, 823–24 (Ala.1984), and *Papastefan v. B & L Constr. Co.,* 356 So.2d 158, 160 (Ala. 1978)). 'The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury.' *Id.* (citing *Smith v. National Sec. Ins. Co.,* 860 So.2d 343, 345, 347 (Ala.2003), *Lowe v. East End Mem'l Hosp. & Health Ctrs.,* 477 So.2d 339, 341–42 (Ala.1985), *Miller v. Mobile Cnty. Bd. of Health,* 409 So.2d 420, 422 (Ala.1981), and *Amason v. First State Bank of Lineville,* 369 So.2d 547, 550 (Ala.1979))."

*Dodd v. Consolidated Forest Prods., LLC,* 192 So.3d 409, 413 (Ala.Civ.App.2015). After reviewing McConico's complaint, we conclude that she did not sufficiently allege facts that would indicate that either Falls or Patterson concealed from her the causes of action of negligence/malice, libel/defamation, or conspiracy, and she did not allege any facts or circumstances regarding what prevented her from "discovering" those claims. *Id.* Therefore, the trial court did not err in refusing to apply the doctrine of equitable tolling to those claims and in dismissing them as time-barred.

■ Finally, McConico contends that the fetus that she miscarried was a child who, pursuant to § 6–2–8, Ala.Code 1975, was entitled to the suspension of the two-year limitations period for asserting the wrongful-death claim "until the relief of disability or within nineteen years." Under § 6–2–8(a), a person younger than 19 years of age is allowed 3 years (or the period allowed by law for the commencement of an action if it be less than 3 years) after reaching the age of majority to commence or defend a civil action. We find this issue to be without merit.

In *Cofer v. Ensor,* 473 So.2d 984, 993 (Ala.1985), our supreme court held that "the two-year period fixed by § 6–5–410[, Ala.Code 1975, the wrongful-death statute,] is a statute of creation, and, therefore governs *all* suits for wrongful death, *whether the death is that of a minor* or an adult *and whether the plaintiff is* an adult, a minor, or *a representative.*" (Some emphasis added.)[4] In her complaint, McConico avers that she miscarried the fetus "on or about January 15, 2010." Therefore, she had until January 2012 to file her claim of wrongful death in connection with the death of the fetus. The initial complaint alleging a claim of wrongful death was not filed until September 30, 2014, more than two years after the limitations period had expired as to the wrongful-death claim. Accordingly, the trial court properly dismissed McConico's claim of wrongful death on the ground that it was time-barred.

For the reasons set forth above, that portion of the judgment dismissing McConico's claim of malicious prosecution

---

4. *See Cofer,* 473 So.2d at 987–91 for a discussion of the distinction between a "true" statute of limitations and a statute of creation, that is, a statute that creates a new right of action with an express restriction on the time within which an action may be brought to enforce the right.

is reversed, and the cause is remanded for further proceedings. In reversing the judgment as to that claim, we are not expressing an opinion as to whether McConico should prevail on the malicious-prosecution claim, we hold only that the claim was improperly dismissed at this stage of the litigation. The remainder of the judgment, in which the claims of negligence/malice, libel/defamation, conspiracy, and wrongful death are dismissed, is affirmed.

APPLICATION GRANTED; OPINION OF JANUARY 8, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.